<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HORACE WHITE, | |
| Plaintiff, | Civil Action No.: 13-2492 (MAS) (TJB) |
| v. | **MEMORANDUM OPINION** |
| ELDA SANCHOMORA, et al., | |
| Defendants. | |

<u>**SHIPP, District Judge**</u>

Plaintiff Horace White ("Plaintiff") brings this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. This matter comes before the Court on Defendants Elda Sanchomora, Jeffrey Glover, Steven Stern, Janet Monroe, Susan Thomas, and Frank Hubbard's ("Defendants") motion to dismiss Plaintiff's Amended Complaint. (ECF No. 51.) Plaintiff, through court-appointed counsel, filed opposition (ECF No. 57), and Defendants replied (ECF No. 58). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants' motion is granted.

**I.   FACTUAL BACKGROUND**

For the purposes of this Memorandum Opinion, the Court views all facts alleged by Plaintiff as true and in the light most favorable to him. Following his acquittal by reason of insanity in a state court criminal matter, Plaintiff was involuntarily committed to Greystone Psychiatric Hospital ("GPH") in Morris Plains, New Jersey, pursuant to a state court order under *State v. Krol*, 68 N.J. 236 (1975). (Am. Compl. ¶ 13, ECF No. 46; Pl.'s Opp'n Br. 3, ECF No. 57.) Plaintiff

alleges that in or about 2009, he was assaulted by another patient at GPH when they were left unattended by the GPH staff, even though they were deemed as requiring "one on one" observation at all times. (Am. Compl. ¶¶ 14-15)

Plaintiff further alleges that, later in 2009, he was released from GPH to live in an apartment in Montclair, New Jersey, under the condition that he receive eighteen months of screening. (*Id.* at ¶ 17.) However, shortly thereafter, Plaintiff was recommitted to GPH, allegedly without justification. (*Id.* at ¶ 18.) In October of 2010, Plaintiff again was attacked by another patient. (*Id.* at ¶ 19.) This time, several named defendants intervened to quell the altercation. (*Id.*) After the defendants ended the altercation, they forcibly injected Plaintiff with antipsychotic medication over his objection, at which time he informed the defendants that he was allergic to the medication. (*Id.* at ¶ 20.) As a result of the forcible injection, Plaintiff suffered a severe allergic reaction with "myosis, swelling of the feet and hands, and permanent bone discomfort and damage." (*Id.* at ¶ 22.) On December 7, 2012, Plaintiff was transferred to "Ann Klein Forensic Center, a more restrictive facility . . . without prior notice or any form of due process." (*Id.* at ¶ 24.) The Court construes the Amended Complaint as asserting failure-to-protect, inadequate medical services, wrongful confinement, and wrongful transfer claims.

Plaintiff, proceeding pro se, filed the instant original complaint, dated April 3, 2013, on April 11, 2013. (Compl., ECF No. 1.) The Honorable Joel A. Pisano, U.S.D.J., granted Plaintiff in forma pauperis status and permitted the Complaint to proceed. (Order, Dec. 20, 2013, ECF No. 3.) The case was later reassigned to this Court. (Text Order, Mar. 10, 2015, ECF No. 21.) Subsequently, the Honorable Tonianne J. Bongiovanni, U.S.M.J., granted Plaintiff's request for pro bono counsel, and appointed Carroll, McNulty & Kull, LLC, to represent Plaintiff. (Order,

Mar. 31, 2015, ECF No. 22.)[1] In the order granting Plaintiff's pro bono counsel request, Judge Bongiovanni reasoned that, based on correspondence submitted by Plaintiff's treating physician, Dr. Y. R. Dhaibar, Plaintiff's ongoing condition of "Bipolar I Disorder Manic with Psychotic Features" negatively affected Plaintiff's ability to present his case.[2] (Order 1, Jan. 21, 2015, ECF No. 20.) Judge Bongiovanni noted, however, that Plaintiff's "submissions to the Court have been articulate[.]" *Id.* With the assistance of counsel, Plaintiff filed an Amended Complaint. (ECF No. 46.) The instant Motion followed.

## II.   STANDARD OF REVIEW

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). On a motion to dismiss for failure to state a claim brought pursuant to Rule 12(b)(6), a "defendant bears the burden of

---

[1] Carroll, McNulty & Kull, LLC was replaced by Connell Foley, LLP on May 13, 2015. (ECF No. 26.)

[2] Dr. Dhaibar's report only addressed treatment Plaintiff had received since September 24, 2014. (Order 1.)

3

showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

In addition, the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), provides that in civil actions in which a plaintiff is proceeding in forma pauperis, a district court "*shall* dismiss the case *at any time* if the court determines that" a claim is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (emphasis added).

## III. DISCUSSION

### A. Wrongful Confinement and Transfer

Plaintiff claims that since he is not mentally incapacitated, his current confinement is unconstitutional because he was recommitted without due process and justification. Plaintiff seeks injunctive relief, in the form of immediate release from custody, as well as compensatory damages. Plaintiff also alleges that his transfer without prior notice or any form of due process was unconstitutional.[3] To the extent Plaintiff is seeking release, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Involuntary civil commitments are challengeable under § 2254. *Duncan v. Walker*, 533 U.S. 167,

---

[3] The Court does not address Defendants' qualified immunity defense. Rather, the Court exercises its authority under § 1915 to sua sponte dismiss these claims on alternative grounds. *See Bierley v. Dombrowski*, 309 F. App'x 594, 597 (3d Cir. 2009) (affirming the district court's dismissal on alternative grounds, invoking § 1915); *Woodson v. Colajezzi*, No. 12-0973, 2012 WL 4932022, at *2 (E.D. Pa. Oct. 16, 2012) (granting defendants' motion to dismiss on alternative grounds under § 1915).

4

176 (2001) (holding that § 2254 is not limited to addressing only those individuals confined under a criminal conviction, and that it covers "state court order[s] of civil commitment"); *Grass v. Reitz*, 643 F.3d 579, 585 (8th Cir. 2011); *Jenicek ex rel. J.J. v. Sorenson Ranch School, Utah*, No. 14-4422, 2014 WL 7332039, at *3 (D.N.J. Dec. 16, 2014). Thus, the Court cannot grant such relief in the instant § 1983 action; Plaintiff must file a separate federal habeas petition if he wishes to seek relief in the form of immediate release. *See Banda v. N.J. Special Treatment Unit Annex*, 164 F. App'x 286, 287 (3d Cir. 2006) ("The District Court properly held that Banda's claim for immediate release [from involuntary commitment] must be sought through a petition for a writ of habeas corpus.").

To the extent Plaintiff seeks compensatory damages for his alleged wrongful confinement and wrongful transfer, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court stated,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id.* at 486-87 (footnote omitted). "[A] state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005)).

When a plaintiff is challenging the wrongfulness of his involuntary civil commitment pursuant to a valid state court order, *Heck* is equally applicable because a finding for Plaintiff would necessarily render that confinement invalid. *Banda*, 164 F. App'x at 287 ("Banda's section 1983 action essentially alleged that he was involuntarily committed, in violation of his civil rights . . . [which is] not cognizable under section 1983 because a favorable outcome would necessarily imply the invalidity of his confinement.").[4] Accordingly, the Court dismisses Plaintiff's wrongful confinement and transfer claims without prejudice. *See United States v. Miller*, 197 F.3d 644, 652 n.7 (3d Cir. 1999) ("When a plaintiff files a § 1983 action that cannot be resolved without inquiring into the validity of confinement, the court should dismiss the suit without prejudice.").

### B. Statute of Limitations

Defendants assert that Plaintiff is barred by the applicable statute of limitations from asserting his failure-to-protect and inadequate medical care claims, and the Court agrees. Federal courts look to state law to determine the limitations period for § 1983 actions. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007); *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 859 (3d Cir. 2014). Civil rights or constitutional tort claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. *Lagano*, 769 F.3d at 859. Accordingly, New Jersey's two-year limitations period on personal injury actions governs Plaintiff's claims here. *Id.* Under New Jersey law, an action for

---

[4] With regard to Plaintiff's wrongful transfer claim, the Court notes that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see Becerra v. Miner*, 248 F. App'x 368, 370 (3d Cir. 2007). Transfer decisions do not violate the Constitution unless they are related to a quantum change in the level of custody, or they are made in contravention of a sentence recommendation. *See Kenney v. Warden Lewisburg USP*, 591 F. App'x 45, 47 (3d Cir. 2014); *Ganim v. Fed. Bureau of Prisons*, 235 F. App'x 882, 884 (3d Cir. 2007). Even if the Court were to examine the merits of Plaintiff's wrongful transfer claim, his one-sentence conclusory allegation falls far short of sufficiently stating an unconstitutional transfer claim.

6

an injury caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. N.J.S.A. 2A:14–2; *Lagano*, 769 F.3d at 859.

The statute of limitations defense is an affirmative defense that the defendants generally must plead and prove. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). While a plaintiff is not required to plead that the claim has been brought within the statute of limitations, *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015), if the allegations of a complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see Stephens*, 796 F.3d at 288.

Here, it is apparent from the face of the Amended Complaint that Plaintiff's failure-to-protect and inadequate medical care claims are barred by the statute of limitations. The incidents that gave rise to Plaintiff's failure-to-protect claims occurred "[i]n or about 2009" and October of 2010. (Am. Compl. ¶¶ 17, 19.) For the inadequate medical care claim, the incident giving rise to that claim also occurred in October of 2010. (*Id.* at ¶ 19.) As such, Plaintiff's limitations period for all of these claims expired, at the latest, in October of 2012. The Complaint in the instant matter, however, was filed on April 11, 2013, and the Complaint itself was dated April 3, 2013. (Compl. 11.) As such, these claims are barred by the statute of limitations.

Plaintiff argues that the statute of limitations has not expired on these claims, citing N.J.S.A. 2A:14-21, which provides that if a person:

> has a mental disability that prevents the person from understanding his legal rights or commencing a legal action at the time the cause of action . . . accrues, the person may commence the action . . . within the time as limited by [the statute of limitations], after . . . having the mental capacity to pursue the person's lawful rights.

N.J.S.A. 2A:14-21. Plaintiff contends that his statute of limitations did not start to run until counsel was appointed in the instant matter, because his "*Krol* status and continued commitment to GPH

7

is indisputable evidence of his ongoing mental incapacity[.]" (Pl.'s Opp'n Br. 10.) In essence, Plaintiff asserts that by virtue of his placement in a mental institution under *Krol*, his legal claims — at least those to which N.J.S.A. 2A:14-21 applies — are perpetually tolled for the period he remains in the mental institution or until a court appoints legal counsel. As presented, Plaintiff's argument would not apply only to him, but to all individuals involuntarily committed pursuant to *Krol*. The Court can find no basis for that overreaching proposition.

For support, Plaintiff cites to the two seminal cases on the use of N.J.S.A. 2A:14-21 for tolling purposes: *Kyle v. Green Acres at Verona, Inc.*, 44 N.J. 100 (1965), and *Todish v. Cigna Corp.*, 206 F.3d 303 (3d Cir. 2000).[5] Neither *Kyle* nor *Todish* supports Plaintiff's proposition. To begin, neither case specifically addressed Plaintiff's argument that his *Krol* status automatically qualifies him for tolling under N.J.S.A. 2A:14-21. Furthermore, *Kyle* defined "insanity" for the purposes of N.J.S.A. 2A:14-21 as "a condition of mental derangement [that] actually prevents the sufferer from understanding his legal rights or instituting legal action." 44 N.J. at 113. In analyzing the statute, the *Kyle* court recognized that "the issue of insanity most frequently occurs in [certain] judicial proceedings[,]" such as where a defendant "pleaded . . . insanity and irresponsibility[.]" 44 N.J. at 112. However, the *Kyle* court noted that "'insanity' has many meanings, for . . . one may be insane for one purpose and sane for another." *Id.* at 113. As such, *Kyle* specifically disavowed the kind of broad interpretation that Plaintiff requests the Court to adopt here. Moreover, the Court can find no New Jersey case applying N.J.S.A. 2A:14-21 simply

---

[5] Both *Kyle* and *Todish* addressed a previous version of N.J.S.A. 2A:14-21, which allowed tolling for persons who are "insane." *See Kyle*, 44 N.J. at 105-06. The statute was amended in 2013 to its present form. However, as the comments to the amendment make clear, the amendment did not intend to change the legal standard for determining the applicability of the statute, and *Kyle* continues to be the controlling case. *See* N.J.S.A. 2A:14-21, law revision comm'n cmt. to 2013 amendment.

8

because a plaintiff was committed under *Krol*. This supports the finding that a plaintiff may be insane for purposes of an insanity defense in a criminal matter but not insane for the purposes of tolling. Therefore, Plaintiff's *Krol* status does not absolve him from the burden of demonstrating that his mental impairment prevented him from understanding his legal rights.

*Todish* likewise supports the Court's interpretation of the statute. In *Todish*, the plaintiff argued for tolling under N.J.S.A. 2A:14-21, citing her history of mental difficulties. 206 F.3d at 305. The Third Circuit acknowledged that the *Todish* plaintiff had "a history of mental difficulties." *Id.* at 306. However, the *Todish* court found that simply suffering from mental difficulties, without a showing that those difficulties prevented plaintiff from understanding her legal rights, did not warrant the application of N.J.S.A. 2A:14-21. *Id.* Instead, the *Todish* court relied on evidence showing that the plaintiff had been able to pursue her legal claims as proof that she had the ability to understand her legal rights and to institute legal action within the statute of limitations period. 206 F.3d at 306. As Plaintiff acknowledged, the *Todish* plaintiff offered evidence that she did not understand her legal rights and claims. *Id.* Nevertheless, the Third Circuit disregarded the evidence, finding that the applicability of N.J.S.A. 2A:14-21 did not turn on the plaintiff's actual knowledge or understanding. *Id.* Rather, the court explained, "the lack of understanding that would render her 'insane' must have derived from her mental illness and placed her at a level of understanding below that of the usual plaintiff, of whom we require diligence in discovering the legal wrong." *Id.* at 306-07.

Many plaintiffs, especially those appearing pro se, lack a degree of knowledge or understanding of their legal rights based on their lack of education and legal training. Some of them, like Plaintiff here, may also suffer from certain mental difficulties. However, absent a showing that the mental difficulties *caused* the lack of understanding of his legal rights, Plaintiff

9

is not entitled to tolling under N.J.S.A. 2A:14-21. Here, beyond his *Krol* status, Plaintiff makes no allegation that he possessed any mental impairment that rendered him incapable of understanding and pursuing his legal claims. Instead, the pleadings, and even Plaintiff's own allegations in the Amended Complaint, contradict his claim of mental incapacity. To begin, a comparison of the initial Complaint, filed by Plaintiff himself, and the Amended Complaint, filed by appointed counsel, shows that the claims raised in both complaints are materially the same. (*Compare* Compl. 6-10, *with* Am. Compl. ¶¶ 26-47.) While the Court recognizes and appreciates counsel's effort to streamline Plaintiff's claims in the Amended Complaint, the fact that the two complaints are materially similar indicates that Plaintiff, at least at the time he filed the original Complaint, had a good understanding of his legal claims. Indeed, Judge Bongiovanni acknowledged this in her order, finding Plaintiff's submissions articulate. Although Judge Bongiovanni appointed counsel based on a physician's report that Plaintiff suffered from bipolar disorder, the physician's report concerned treatment that occurred after September 24, 2014, well after the Complaint had been filed. Although the report was certainly relevant to Judge Bongiovanni's decision to appoint pro bono counsel, it has no bearing on whether tolling should be granted for Plaintiff's claims.

Furthermore, as the Court pointed out above, there are no additional allegations showing that based on some extraordinary circumstance, Plaintiff lacked the same legal understanding, or the capacity to understand, at the time the alleged violations occurred. Therefore, based on the facts in front of this Court, this is not a case where Plaintiff lost his mental capacity, perhaps due to the alleged violations, which he then later regained when filing the Complaint. Based on the allegations in the pleadings, he was an involuntarily committed individual under *Krol* both at the time of the alleged violations and at the time the Complaint was filed, so there was no demonstrated

change in mental capacity. As such, Plaintiff's *Krol* status, alone, has little relevance to whether he suffered from a mental disability that entitles him to tolling under N.J.S.A. 2A:14-21.

Furthermore, one of Plaintiff's allegations in the Amended Complaint contradicts his assertion of mental incapacity solely based on his *Krol* status. In support of his wrongful confinement claim for his recommitment in 2009, Plaintiff alleges that the recommitment was unconstitutional because he "is *not* mentally incapacitated and is fit to manage his own affairs." (Am. Compl. 8 (emphasis added).) Hence, although Plaintiff has been unquestionably detained under *Krol* since his recommitment, Plaintiff himself acknowledges that such commitment is not necessarily indicative of his mental capacity. As *Todish* noted, a plaintiff's ability to manage her own affairs is suggestive of her mental awareness to understand her legal rights. 206 F.3d at 306. Plaintiff cannot allege, on the one hand, that his confinement is unconstitutional because he is not mentally incapacitated, but argue, on the other hand, that he is mentally disabled for the purposes of N.J.S.A. 2A:14-21. *Cf. Cummings v. Crumb*, 347 F. App'x 725, 727 (3d Cir. 2009) (finding that plaintiff's "changing and contradictory allegations" do not establish that he exhausted administrative remedies as alleged); *Bailey-El v. Fed. Bureau of Prisons*, 246 F. App'x 105, 109 (3d Cir. 2007) ("The allegations against Watts are wholly speculative as the Complaint asserts contradictory allegations that Watts's actions were both knowing and intentional and, at the same time, unknowing and grossly negligent."). Accordingly, the Court rejects Plaintiff's argument for the application of N.J.S.A. 2A:14-21, and finds that his failure-to-protect and inadequate medical care claims are time-barred by the statute of limitations. Likewise, Plaintiff's state law claims of "breach of duty" for injuries he suffered from the assault and forced medication (Am. Compl. ¶¶ 30-33) are subject to the same two-year statute of limitations for personal injury, so the Court finds that they are similarly time-barred. The Court, however, dismisses these claims without

11

prejudice to the extent that Plaintiff can demonstrate his mental incapacity. Even though this dismissal is without prejudice, the Court is not granting leave to amend as Plaintiff has not requested such relief, nor asserted sufficient facts in the briefing before the Court to determine that amendment would not be futile. If Plaintiff wishes to reopen this case, he may file an appropriate motion to amend his complaint that cures the defects identified in this opinion.

## IV. CONCLUSION

For the reasons set forth above, the Motion is GRANTED.[6]

          s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: May 31, 2016

---

[6] The Court extends its appreciation to appointed counsel for the time and effort expended on this case. Although the Court is dismissing the case, counsel's zealous representation of Plaintiff deserves to be commended.

12